**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Archbishop Kingpimp Shortymacknifisent,

Plaintiff,

v.

Tony Hunter, et al.,

Defendants.

Civ. No. 22-766 (DSD/BRT)

**REPORT AND RECOMMENDATION**

---

Archbishop Kingpimp Shortymacknifisent, MCF-Stillwater, 970 Pickett St., Bayport, MN 55003, *pro se*.

---

BECKY R. THORSON, United States Magistrate Judge.

This action is before the Court on various filings by Plaintiff Archbishop Kingpimp Shortymacknifisent. For the following reasons, this Court recommends that Doc. No. 65 be deemed this action's operative Complaint, and that it be dismissed in part. This Court further recommends that Plaintiff's pending motions and requests (Doc. Nos. 8, 9, 14, 15, 17, 18, 19, 20, 34, 36, 37, 41, 45, 47–51, 55, 59, 85, 87, 88, and 91) be denied.

## I. Background and the Operative Complaint

This action commenced on March 30, 2022, with the filing of Plaintiff's original Complaint (the "First Complaint"). (*See* Doc. No. 1, First Compl.) The First Complaint presented two Plaintiffs: Plaintiff himself—then a prisoner at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault")—and the "International Alfred Bilbo

Gholson Church of Ministries, Incorporated," a religious group to which Plaintiff claims to belong. (*Id.* at 1.)[1] It named almost 50 Defendants from a wide-ranging set of different situations and circumstances. (*See, e.g.*, *id.* at 1–2.) On May 5, 2022, this Court entered an order explaining that the First Complaint "suffer[ed] from serious joinder problems." (Doc. No. 24 at 3.) The Court gave Plaintiff an "opportunity to file an amended complaint" by June 3, 2022. (*Id.* at 5, 7.) The deadline was later extended to July 1, 2022. (Doc. No. 32 at 1–2.) On July 5, 2022, the Court received Plaintiff's Amended Complaint (the "Second Complaint").[2] (Doc. No. 40.) The Second Complaint was Plaintiff's response to this Court's order demanding an amended pleading, so once filed, it became this action's operative pleading.

While this Court's review of Plaintiff's Second Complaint was pending, on September 2, 2022, the Court received a document from Plaintiff titled, "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983" (the "Third Complaint").[3] (Doc.

---

[1] Citations in this Report and Recommendation to filed materials use the pagination provided by the Court's CM/ECF filing system.

[2] The Second Complaint named 19 Defendants. Its substantive focus was on Plaintiff's treatment by (1) 180 Degrees, an entity referred to as a "halfway house correctional facility"; (2) Hennepin County personnel monitoring those on supervised release; and (3) staff at MCF-Faribault. (Doc. No. 40 at 1–3.) Alongside this filing, Plaintiff sent 14 other filings, including a handwritten copy of the First Complaint. (*See* Doc. Nos. 41–54.)

[3] Federal circuits are split as to whether a plaintiff who amends a complaint due to a court order or request retains the right to amend as a matter of course under Federal Rule of Civil Procedure 15(a)(1). *Compare Elliott v. Foufas*, 867 F.2d 877, 882–83 (5th Cir. 1989) (finding that such litigants lose that right), *and Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (same), *with Ramirez v. Cnty. of San Bernardino*,

No. 65, Third Compl. at 1 (cleaned up).) Plaintiff's Third Complaint named around three dozen defendants, all new to this action.[4] (*See id.*) Because it was unclear whether Plaintiff meant for the Third Complaint to become this action's operative complaint or to commence a separate action, the Court issued an order requiring Plaintiff to explain the Third Complaint's purpose. (*See* Doc. No. 72 at 1–2.) On September 19, 2022, the Court received Plaintiff's response. (*See* Doc. No. 76.) The responsive text reads as follows:

> I, ARCHBISHOP KINGPIMP SHORTYMACKNIFISENT, PROMULGATE THAT
> I'M MOVING 4-WARD WITH TONY HUNTAH THRU' A.W.O.-DOEDE
> N HOWEVAH, MY $TATUTE ¢HALLENGE, THE GHOL$ON$ DECT, AND ALL
> OTHAH $AID DO¢UMENT$ R EVIDENCE A$ $TATED ON THE ENVELOPE$ 2 N-
> ¢LUDE THAT I'MMAH FILE'AH $EPARATE A¢TION AGAIN$T MCF-$TW,
> THO' I ¢OULDVE $WORN THAT $AME $ITUATION, ¢IRCUM$TANCE$ ET¢ETERA,
> WA$ ¢ON$IDERED THE $AME A¢TION HOWEVAH, THE DO¢UMENT$ THAT I'VE
> ALREADY $ENT N-REGARD$ 2 MCF-$TW A$ EVIDENCE I ¢AN'T $END 2
> YOU (THE ¢OURT$-JUDGE$) BE¢AU$E I'VE ALREADY $UMMITED THE DO¢U-
> -MENT$ 2 THE ¢OURT$! EVERYTHING MEAN$ MY ATTEMPT @ N-¢LUDI-
> -NG MCF-$TW N THE $AME A¢TION FAILED 2 FALL THRU' HOWEVAH, ALL
> DO¢UMENT$ THAT I'VE FILED MINU$ (-), THE $PE¢IFI¢ A¢TION N-REGARD$,
> 2 MCF-$TW I$ 4 THE TONY HUNTAH THRU' A.W.O.-DOEDEN...2 WIT,
> DO¢TAH. ARCHBISHOP KINGPIMP SHORTYMACKNIFISENT, A.K.A EL $ANTO
> DE MAR NEGRO / $EPTEMB'AH 4-TEENTH 2022

---

806 F.3d 1002, 1005–08 (9th Cir. 2015) (finding that such litigants retain the right). The U.S. Court of Appeals for the Eighth Circuit has not addressed the issue.

This Court need not—so does not—take any position on this issue here. If filing the Second Complaint did not strip Plaintiff of the right to amend as a matter of course, then of course (no pun intended) he could file the Third Complaint as a matter of course. On the other hand, to the extent that filing the Second Complaint did eliminate Plaintiff's right to amend as a matter of course, this Court, applying Rule 15(a)(2)'s liberal standard for amendments, would permit amendment through the Third Complaint. *See, e.g.*, Fed. R. Civ. P. 15(a)(2) (noting that court "should freely give leave [to amend] when justice requires"); *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 956 (8th Cir. 2017) (quoting Rule 15(a)(2)).

[4] On the same day, Plaintiff submitted six other filings, all which appear to be exhibits in support of the Third Complaint. (*See* Doc. Nos. 66–71.)

(*Id.* at 1.) Based on this filing, this Court initially construed Plaintiff's Third Complaint to be the pleading for a new, separate action. (*See* Doc. No. 79 at 2 n.1.) But less than a month later, on October 17, 2022, without seeking leave, Plaintiff filed another purported Amended Complaint (the "Fourth Complaint"). (*See* Doc. No. 84, Fourth Compl. 1.) As best as this Court can tell, the Fourth Complaint covers much of the same alleged conduct as the Third Complaint does, but it has significantly different requests for relief. In particular, the Fourth Complaint appears to ask for significantly more forms of injunctive relief. (*Compare* Third Compl. 13–14 *with* Fourth Compl. 6–11.) Plaintiff's new filing indicated to this Court that Plaintiff intended to maintain the Third Complaint in *this action*.[5] This Court will therefore treat the Third Complaint as this action's operative Complaint and the Fourth Complaint as Plaintiff's attempt to amend that Complaint.

This leaves the issue of the Fourth Complaint's effect. After the filing of the Third Complaint, Plaintiff could not file the Fourth Complaint "as a matter of course" under Federal Rule of Civil Procedure 15(a)(1); he thus needs "the court's leave" for the Fourth

---

5 This interpretation is reinforced by the fact that after submitting his response of September 19, 2022, Plaintiff never went ahead and filed the Third Complaint as a separate, new action. (*See* Doc. No. 76 at 1.) Instead, as discussed above, he filed the Fourth Complaint. This Court further notes that Plaintiff apparently understands how to file new actions, because on October 11, 2022 (days before he filed his Fourth Complaint), he filed a new, separate case in this District, concerning issues and parties completely different from those raised by the Third Complaint. (*See Shortymacknifisent v. Universal Life Church*, No. 22-CV-2567 (KMM/ECW), Doc. No. 1, Compl. (D. Minn. Oct. 11, 2022); *see also Shortymacknifisent v. Universal Life Church*, No. 22-CV-2567 (KMM/ECW), Doc. No. 5, Order & R. & R. 1–3, 7 (D. Minn. Oct. 27, 2022 (discussing action and recommending its dismissal without prejudice).) Plaintiff's actions after September 19, 2022, strongly suggest that he did not intend for the Third Complaint to start a new, separate action.

Complaint to become this action's operative pleading. To be sure, Rule 15(a)(1) states that a court should "freely give leave [to amend] when justice so requires." Even under this liberal standard, however, a court can deny leave to amend where various circumstances exist, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also, e.g.*, *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015) (making same point (citing *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013))). Moreover, Plaintiff did not formally move for leave to amend the Third Complaint as required by Local Rule 15.1, and failure to follow a district's local rules can justify district-court denial of motions to amend. *See, e.g.*, *Magdy v. I.C. Sys., Inc.*, 47 F.4th 884, 889 (8th Cir. 2022) (affirming district-court leave-to-amend denial where movant did not follow local rules concerning motions to amend); *cf. Ambrosecchia*, 855 F.3d at 956 (affirming district-court leave-to-amend denial where plaintiff did not formally move for leave to amend and did not "provide the substance of the proposed amendments" (citing *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006))).

Under these guidelines, justice does not require letting Plaintiff substitute in the Fourth Complaint. Furthermore, given that the Third and Fourth Complaints seem to cover much the same conduct, this Court sees little reason, especially given Plaintiff's lack of explanation to the contrary, why using the Third Complaint rather than the Fourth would be unjust. Thus, for the reasons stated, this Court recommends treating the Third

Complaint (Doc. No. 65) as this action's operative pleading. Additionally, this Court recommends that Plaintiff's Fourth Complaint be stricken from the docket.

## II. The Third Complaint

This Court now reviews the Third Complaint under 28 U.S.C. §§ 1915 and 1915A, recommends various claims' dismissal, and isolates a select few allegations where (in this Court's view) it appears that only certain related claims should proceed (at least for now). This Court often—if not usually—discusses a complaint's allegations as a whole before turning to specific claims, but the Third Complaint's format makes a different approach more useful. The Third Complaint's substantive allegations consist of a set of paragraphs, usually one per Defendant, putting all substantive allegations about a given Defendant in one place. (*See* Third Compl. 5–12.) As a result, after discussing relevant standards of review, this Court will directly address Plaintiff's allegations in groups.

### A. Review of Plaintiff's Third Complaint Under 28 U.S.C. §§ 1915 and 1915A

#### 1. Standards of Review

Rather than pay this action's filing fee, Plaintiff filed an IFP application, which the Court granted. (*See* Doc. Nos. 2, 76.) Under 28 U.S.C. § 1915, the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, [a] court shall dismiss [a] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B)(ii).[6] Furthermore, because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," this action is also subject to 28 U.S.C. § 1915A. Under § 1915A(b), a district court facing such a case "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

To assess whether the Third Complaint states a claim, the Court assumes its allegations are true and makes all reasonable inferences in Plaintiff's favor based on them. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594–95 (8th Cir. 2009) (citing cases). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555 (citing authorities). A district-court determination of whether a pleading meets this threshold is "context-specific"; a court must "draw on its judicial experience and common sense."

[6] While the wording here refers to a "case," this District's Courts routinely use § 1915(e)(2) to dismiss portions of cases as well. *See, e.g.*, *Mendez v. Kallis*, No. 21-CV-1147 (PJS/BRT), 2021 WL 3476681, at *2 n.3 (D. Minn. May 27, 2021), *report and recommendation adopted in relevant part*, 2021 WL 2911171 (D. Minn. July 12, 2021), *aff'd*, No. 21-2667, 2021 WL 6689158 (8th Cir. Aug. 16, 2021); *Hunter v. Mayo Clinic*, No. 21-CV-0742 (ECT/HB), 2021 WL 1877638, at *2 n.3 (citing cases) (D. Minn. Apr. 16, 2021) (citing cases), *report and recommendation adopted*, 2021 WL 1873430 (D. Minn. May 10, 2021).

*Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Although the Court construes *pro se* complaints liberally, *pro se* litigants like Plaintiff "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).[7]

**2. Official Capacity Claims and Claims Against MCF-Stillwater**

In his Third Complaint, Plaintiff names Minnesota Correctional Facility–Stillwater ("MCF-Stillwater")—the facility where he is now incarcerated—as a Defendant, and also names various individual Defendants in their official capacities. (*See* Third Compl. 2–5.) However, because MCF-Stillwater is a state entity, Plaintiff's claims against MCF-Stillwater are effectively against the State of Minnesota.[8] *See, e.g.*, *Carter v. CWF Sols.*,

---

[7] Plaintiff has submitted a wide variety of documents and exhibits, at least some of which appear intended to provide support for his claims. (*See generally* Docket.) Because it is Plaintiff's job—not the Court's—to craft his Complaint, the Court will not go through all of Plaintiff's various filings and purported exhibits to find relevant allegations or suggest possible causes of action. *See, e.g.*, *Smith v. Hennepin Cty. Fam. Ct.*, No. 19-CV-3100 (DSD/BRT), 2020 WL 1930555, at *1 n.2 (D. Minn. Mar. 24, 2020) (declining to look through exhibits "to determine what causes of action might apply to various Defendants" (citing cases)), *report and recommendation adopted*, 2020 WL 1923219 (D. Minn. Apr. 21, 2020); *Murrin v. Avidigm Capital Grp., Inc.*, No. 07-CV-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008) (declining to look through documents to find "evidence that might establish a prima facie case" for certain claims (citing cases)). This Court's review will therefore be based on the allegations in the Third Complaint alone. *See* Fed. R. Civ. P. 8(a)(2) (stating that a complaint must contain "short and plain statement of the claim showing that the pleader is entitled to relief").

[8] To the extent Plaintiff wishes to sue the prison itself, this Court notes that prisons and other correctional facilities are not legal entities subject to suit. *See, e.g.*, *Dalton v. Hansford*, No. 11-CV-2757 (SRN/JJG), 2011 WL 6965053, at *3 n.2 (D. Minn. Oct. 28, 2011) (finding, in relevant part, that a state correctional facility is not a suable entity);

*LLC*, No. 09-CV-16 (JMR/FLN), 2009 WL 512482, at *2 (D. Minn. Feb. 27, 2009). Similarly, Plaintiff's claims against individual Defendants in their official capacities are also claims against Minnesota. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citation omitted). The Eleventh Amendment bars claims for damages by private parties against a state. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618–19 (8th Cir. 1995). Minnesota has not waived its Eleventh Amendment immunity from suit in federal court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388–89 (D. Minn. 1985). Thus, sovereign immunity under the Eleventh Amendment is a bar to Plaintiff's claims against the state.

The only exception to this is Plaintiff's requests for injunctive relief. Under *Ex parte Young*, federal courts can exert jurisdiction over official capacity claims against state officials if the claims seek prospective injunctive relief. 209 U.S. 123 (1908); *see also Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 357 (8th Cir. 2020) (citing *Ex parte Young*). However, to properly state such an official capacity claim, a plaintiff must allege that the relevant governmental entity *itself* caused a constitutional violation as a result of "(1) an official . . . policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir.

---

*Carter v. CWF Sols., LLC*, No. 09-CV-0016 (JMR/FLN), 2009 WL 512482, at *2 (D. Minn. Feb. 27, 2009) (making same point as to MCF-Stillwater itself).

2019) (citing *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Brewington v. Keener*, 902 F.3d 796, 801–02 (8th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Here, the Third Complaint has no explicit discussion of any policy, custom, or failure to train or supervise. Thus, Plaintiff has failed to state any official capacity claims.

Because the Eleventh Amendment bars claims for damages by private parties against a state, and because Plaintiff has not alleged any policy, custom, or failure to train or supervise in his Third Complaint, this Court recommends dismissal of Plaintiff's claims against MCF-Stillwater and Defendants in their official capacities.

### 3. Individual Capacity Allegations

For many Defendants, Plaintiff's allegations present generic claims of wrongdoing, provide little to no detail, or simply assert that the relevant Defendant infringed on Plaintiff's constitutional rights. For completeness, the Court lists these Defendants and the relevant allegations here:

- *Defendant Bosch*: Plaintiff identifies Bosch as MCF-Stillwater's warden. (*See* Third Compl. 2.) The Third Complaint's sole allegation about Bosch is that "when [Plaintiff] reached out to him he responded as if [Plaintiff hasn't] memorized" MCF-Stillwater's appeals concerning kites and grievances. (*Id.* at 5.)

- *Defendant "Quist"*: Plaintiff alleges, without any specific facts or details, that Quist escorted him to a room where Quist violated Plaintiff's religious rights, and that Quist also had a conversation with him in which he stated that he remembered Plaintiff. (*Id.* at 5–6.)

- *Defendants "Grievance Coordinator" and "Grievance Authority"*: Plaintiff claims that these Defendants "have both interfered with [Plaintiff's] access to the courts before, telling [Plaintiff that he's] not following the appropriate procedure." (*Id.* at 6.)

- *Defendants "Demay" and "Swanson"*: Plaintiff asserts merely that these two Defendants are "named on the chain of command and have been downplaying [Plaintiff's] health." (*Id.* at 3, 6.) Notwithstanding the facts that Plaintiff apparently previously sought a cane for his medical needs, and authorities provided him one, Plaintiff claims that his medical issues "are never ending." (*Id.* at 6.)

- *Defendants Landrette and "Senior Librarians on the DOC Staff"*: Plaintiff simply claims that these Defendants "intend to violate my federal constitutional rights." (*Id.* at 7.)

- *Defendant Norton*: Plaintiff alleges that Norton is a "paralegal" at MCF-Stillwater and "she calls herself slowing up my process." (*Id.*) It is unclear what this means.

- *Defendants Stewart and Woltman*: Plaintiff contends that Stewart had a conversation with him in which she (Stewart) asked him what he had in his hand, then reported the conversation to another guard. (*See id.*) Plaintiff suggests that Woltman did essentially the same thing, though she asked about Plaintiff's "religious gauge" on his ear. (*Id.*)

- *Defendant Felda*: Plaintiff claims, without any facts or details, that Felda wrote a violation against him and that it is "clear to see that" Plaintiff is being targeted because of his "religious nationality, heritage, and ethnicity." (*Id.* at 7–8.)

- *Defendant "Hammer"*: Plaintiff alleges that Hammer refused to give Plaintiff the name of a fellow prison employee. (*Id.* at 8.)

- *Defendant "Davis"*: Plaintiff states that this Defendant "[tries] to act like he's cool," but during "every interaction [they] have [Plaintiff] can feel his hatred toward [Plaintiff]." (*Id.* at 9.)

- *Defendants "Clark" and "Kline"*: Plaintiff alleges that Defendants Clark and Kline, when they come to Plaintiff's cell with a supply cart, appear anxious to leave "before [Plaintiff has] gotten everything" from the cart. (*Id.*)

- *Defendant "Winberg"*: Plaintiff claims that Winberg "has a rotten attitude" and once failed to get Plaintiff some tissues. (*Id.*)

- *Defendant "African Officer Whose First and Last Name Begins with a D"*: Plaintiff contends that this Defendant slammed Plaintiff's food tray slot

once after providing him a meal, and then the two engaged in a brief verbal exchange. (*Id.*)

- *Defendant "R. Holmes"*: Plaintiff states that this Defendant "ignored" Plaintiff when Plaintiff was collecting trash, used an expletive to refer to Plaintiff, and told Plaintiff that Plaintiff did not "scare" him. (*Id.*) Plaintiff claims that Holmes has for some reason "singled [Plaintiff] out." (*Id.*)

- *Defendant Zempel*: Plaintiff does not identify Zempel's job, though the Court presumes that he works in some fashion at MCF-Stillwater. Plaintiff states that Zempel "has done many things," but provides no specifics except that Zempel recently "nearly close[d] [a] door" on Plaintiff. (*Id.* at 12.)

- *Defendants "Otoo" and "Dr. McCann"*: Plaintiff states that these two Defendants are involved with a "Psychological Services" unit, but otherwise provides no substantive allegations about their conduct. (*Id.* at 4.)

None of the conduct listed above presents a constitutional violation. This Court therefore recommends that Plaintiff's individual capacity claims against Defendants Guy Bosch, "Quist," "Grievance Coordinator," "Grievance Authority," "Demay," "Swanson," John Landrette, "Senior Librarians on the DOC Staff," Sue Norton, Jessica Stewart, Martha Woltman, Corey Felda, "Hammer," "Davis," "Clark," "Kline," "Winberg," "African Officer Whose First and Last Name Begins with a D," "R. Holmes," "Zempel," "Otoo," and "Dr. McCann" be dismissed without prejudice for failing to state a claim.

Having recommended which allegations against Defendants in their individual capacities should be dismissed, this Court addresses the remaining allegations that should proceed past screening under §§ 1915 and 1915A. As noted above, so long as a claim contains facts with enough specificity "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 570, that claim may proceed and will not be subject to dismissal at screening under §§ 1915 and 1915A. *See, e.g.*, *Hageman v. Morrison Cnty.*

*Sheriff's Off.*, No. 19-CV-3019 (JRT/HB), 2020 WL 3547218, at *2 (D. Minn. Apr. 22, 2020) (finding after review that several claims were "sufficiently pled to proceed past the initial § 1915A screening"), *report and recommendation adopted*, 2020 WL 3542752 (D. Minn. June 30, 2020). Here, this Court concludes that Plaintiff, at this stage of the proceedings, has presented several constitutional claims that contain enough specificity to raise a right to relief above the speculative level. These constitutional claims appear to include a First Amendment claim related to Plaintiff's religious diet, several access-to-courts claims under the Fourteenth Amendment's Due Process Clause, and a deliberate-indifference claim under the Eighth Amendment.[9] Specifically, Plaintiff alleges the following:

- Plaintiff alleges that Defendants "Chaplain Scott" and "Chaplain Paul" inappropriately denied him a religious diet, and that Defendant "Hennen" knew his religious diet had been rejected. (*Id.* at 5.) Plaintiff also alleges that this denial related to a "food service issue," and that when Plaintiff informed staff that he was filing a lawsuit, Defendants came to his cell and had him fill out an application. (*Id.*)

- Plaintiff alleges that various MCF-Stillwater personnel (Marisa Williams, "Reid," "CPD Moe," Corey Anderson-Moe, "Lt. Spets," "T. Harrington," "AWO Stenseth, Nikke Vee, "Kruschke," and "Captain Darling") denied him access to the courts. (*See id.* at 5–9.) Specifically, Plaintiff alleges that Defendants failed to properly handle his kites and/or grievances in various ways. (*Id.*)

- Plaintiff alleges that he "repeatedly" informed Defendant Victor Wanchena that he needed a new shower chair because another inmate "well over 300 pounds" was using it. (*Id.* at 6.) Plaintiff further alleges that the chair broke

---

9 Plaintiff does not cite to any specific Amendments when listing his allegations; however, liberally construing his allegations in his favor, they appear to assert violations under the First, Fourteenth, and Eighth Amendments.

while he was using it and that he hit his head and "nearly broke" several of his fingers. (*Id.*)

Though the above allegations may be thinly presented, liberally construed in Plaintiff's favor, they contain facts with enough specificity to allege potential constitutional violations. Thus, this Court concludes that they are sufficiently pled to proceed past the initial screening stage, and therefore recommends that Plaintiff's claims listed against Defendants "Chaplain Scott," "Chaplain Paul," "Hennen," Marisa Williams, Victor Wancheca, "Reid," "CPD Moe," Corey Anderson-Moe, "Lt. Spets," "T. Harrington," "AWO Stenseth," Nikki Vee, "Kruschke," and "Captain Darling" proceed, subject to the other recommendations below.[10]

## III. Pending Motions and Requests

Plaintiff has also filed many motions and requests, which this Court recommends denying for several reasons. First, a number of Plaintiff's pending motions have been superseded by later events. (*See, e.g.*, Doc. No. 8 (seeking permission to amend complaint); Doc. No. 17 (same); Doc. No. 36 (seeking extension of time to file amended complaint).) Thus, this Court recommends these motions (Doc. Nos. 8, 17, 36) be denied as moot.

Second, several of Plaintiff's motions make demands that have little to do with the case's present substance – either because this Court recommends deeming the Third Complaint to be this action's operative complaint, or because this Court recommends that

[10] This summary is without prejudice to the remaining Defendants, after service, answering or otherwise responding to the Third Complaint in any way permitted by the Federal Rules of Civil Procedure.

certain claims or Defendants be dismissed from the action. (*See, e.g.*, Doc. No. 9 (asking the Court to order Defendants to use Plaintiff's purported religious name); Doc. No. 14 (asking the Court to bar third party from contact with Plaintiff); Doc. No. 18 (asking the Court to require Defendants to house Plaintiff in administrative segregation permanently); Doc. No. 19 (asking the Court to require Defendants to let Plaintiff possess certain books while incarcerated); Doc. No. 41 (asking the Court to order a third party to receive Plaintiff's mail and send it to Plaintiff); Doc. No. 47 (again requesting an order permitting possession of certain books); Doc. No. 50 (again requesting an order demanding that Defendants use Plaintiff's purported religious name); Doc. No. 85 (seeking relief against a third-party nondefendant); Doc. No. 88 (asking the Court to order return of diary-like personal document and revoke certain disciplinary proceedings);[11] Doc. No. 91 (asking the Court to force correctional facility's "Psychological Services" staff to refrain from contact with Plaintiff).) Because these motions (Doc. Nos. 9, 14, 18, 19, 41, 47, 50, 85, 88, and 91) bear little to no relationship to the claims in this case if this Court's recommendations are adopted, this Court recommends that these motions be denied.

Third, several motions ask this Court to impose relief of a sort that would be appropriate only if Plaintiff prevails on his claims. (*See* Doc. No. 15 (asking the Court to order any future damages payments to Plaintiff be done in particular way); Doc. No. 48

---

[11] This Court notes that, along with Doc. No. 88, Plaintiff also filed Doc. Nos. 89 and 90. These appear to be documents Plaintiff filed to explain or support the requests in Doc. No. 88.

(asking the Court to require Defendants to provide Plaintiff purported religious diet); Doc. No. 49 (again requesting a specific form of damages payment).) As this case has yet to be adjudicated, this Court recommends that these motions (Doc. Nos. 15, 48, 49) be denied without prejudice.

Fourth, Doc. Nos. 20 and 45 mainly consist of legal arguments about this action as well as state proceedings concerning Plaintiff. These filings lack any requests for affirmative relief. Thus, this Court recommends that these filings (Doc. Nos. 20, 45) be denied.

Fifth, this Court recommends the denial of several of Plaintiff's miscellaneous motions for these reasons:

- A portion of Doc. No. 9 appears to ask the Court to ensure that service occurs on all named Defendants. As this Report and Recommendation will provide for service as needed, this Court recommends denying this portion of Doc. No. 9 as moot.

- Doc. No. 34 asks the Court to provide "whatever documentation" Plaintiff needs to "acquire 1st Amendment recognition/protection." (Doc. No. 34 at 1.) This Court recommends denying this motion because there is no additional document that Plaintiff needs to file at this time, at least for matters still relevant to this case.

- Doc. No. 37 asks the Court to provide Plaintiff copies of Black's Law Dictionary as well as a regular dictionary. Plaintiff, however, provides no indication that he cannot access such materials through a prison library. Thus, this Court recommends denying this motion without prejudice.

- Doc. No. 51 appears to be informing the Court that Defendants may merit default judgment. To the extent that this filing requests any relief, this Court recommends denying that request. So far, no Defendants have been served with process here, so any default-judgment assertions are entirely premature.

- Doc. No. 55 seems to ask the Court to order Defendants to make certain disclosures and submit various purported items of evidence to Plaintiff. Again, Defendants have not been served with process in this case yet. Therefore, any discovery is premature, and this Court recommends denying these requests without prejudice.

- Doc. No. 59 asks the Court to provide him "services other than counsel" under 18 U.S.C. § 3006A(e); specifically, he asks for the Court to fund unspecified "investigative services." But § 3006A concerns services provided for criminal defendants; it does not apply to civil cases. *See, e.g.*, *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) (noting that § 3006A provides for expert-witness fees "in criminal cases . . . but not in civil damage suits" (citation omitted)); *In re A.H. Robins Co., Inc.*, 219 B.R. 135, 143 (E.D. Va.) (noting § 3006A's applicability to criminal cases), *aff'd*, 166 F.3d 331 (4th Cir. 1998). Because the Third Complaint presents a civil action, this Court recommends denying Plaintiff's motion for assistance under § 3006A.[12]

For the reasons stated in this list, this Court recommends that Plaintiff's motions at Doc. Nos. 9 (in relevant part), 34, 37, 51, 55, and 59 be denied.

Finally, Plaintiff filed another document on November 8, 2022, framed as a "petition," which appears to seek modifications to the Fourth Complaint. (*See* Doc. No. 87.) As discussed above, Plaintiff cannot file amendments to his Complaint "as a matter of course" under Federal Rule of Civil Procedure 15(a)(1). Plaintiff must instead first seek leave to amend. *See* Fed. R. Civ. P. 15(a)(2) (noting that a party may amend its pleading only with the court's leave); *see also* D. Minn. LR 15.1(b). As also noted above,

---

[12] Even if § 3006A(e) did concern civil actions, this Court would still recommend denying the motion at Doc. No. 59. Section 3006A permits "*counsel* for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation" to request such services. (Emphasis added.) Here, Plaintiff is not represented by counsel, and has provided no hint of what these unspecified "investigative services" will contribute to this action.

the Court can deny leave to amend where various circumstances exist, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182.

Here, even liberally construing Plaintiff's "petition" as a motion to amend, Plaintiff's motion should be denied for failure to comply with the Local Rules. Local Rule 15.1 provides that any motion to amend a pleading be accompanied by a copy of the proposed amended pleading[13] and a version of the proposed amended pleading that shows how the proposed amended pleading differs from the operative pleading. Plaintiff has not included either with his motion. Failure to follow these rules justifies denial. *See Magdy*, 47 F.4th at 889. Accordingly, this Court recommends that Plaintiff's November 8, 2022, motion to amend (Doc. No. 87) be denied.

## RECOMMENDATION

Based upon the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's filing at Doc. No. 65 be **DEEMED** the operative Complaint in this action;

2. This action's claims against Defendant MCF-Stillwater be **DISMISSED** without prejudice for lack of jurisdiction;

13 Local Rule 15.1 also provides that any amended pleading "must be complete in itself and must not incorporate by reference any prior pleading." *See* D. Minn. LR 15.1(a).

3. This action's official capacity claims be **DISMISSED** without prejudice for lack of jurisdiction;

4. This action's official capacity claims seeking prospective injunctive relief be **DISMISSED** without prejudice for failure to state a claim;

5. This action's individual capacity claims against Defendants Guy Bosch, "Quist," "Grievance Coordinator," "Grievance Authority," "Demay," "Swanson," John Landrette, "Senior Librarians on the DOC Staff," Sue Norton, Jessica Stewart, Martha Woltman, Corey Felda, "Hammer," "Davis," "Clark," "Kline," "Winberg," "African Officer Whose First and Last Name Begins with a D," "R. Holmes," "Zempel," "Otoo," and "Dr. McCann" be **DISMISSED** without prejudice for failure to state a claim;

6. Plaintiff's motions at Doc. Nos. 8, 17, and 36—as well as that portion of Doc. No. 9 that asks the Court to order service on Defendants—be **DENIED** as moot;

7. Plaintiff's motions at 14, 18, 19, 34, 41, 47, 50, 51, 59, 85, 88, and 91—as well as the remaining portion of Doc. No. 9, and Doc. Nos. 20 and 45 (to the extent that they seek affirmative relief)—be **DENIED**;

8. Plaintiff's motions at Doc. Nos. 15, 37, 48, 49, and 55 be **DENIED** without prejudice;

9. Plaintiff's Fourth Complaint (Doc. No. 84) be **STRICKEN**;

10. Plaintiff's motion to amend at Doc. No. 87 be **DENIED**;

11. Given (1) this Court's grant of Plaintiff's application to proceed *in forma pauperis* in this action (*see* Doc. No. 79), and (2) the Court's determination that Plaintiff had no assets and no means by which to pay any initial partial filing fee (*see id.*), Plaintiff be **ORDERED** to pay the unpaid balance—here, $350.00—of this action's statutory filing fee in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court be **ORDERED** to provide notice of this requirement to the authorities at the institution where Plaintiff is confined; and

12. If this Report and Recommendation is adopted, that the Court take the following actions concerning service:

    a. Order Plaintiff to submit a properly completed Marshal Service Form (Form USM-285) for Defendants "Chaplain Scott," "Chaplain Paul," "Hennen," Marisa Williams, Victor Wancheca, "Reid," "CPD

Moe," Corey Anderson-Moe, "Lt. Spets," "T. Harrington," "AWO Stenseth," Nikki Vee, "Kruschke," and "Captain Darling."

b. Order that if Plaintiff does not complete and return the Marshal Service Forms within 30 days of the eventual order's date, this matter will be dismissed without prejudice for failure to prosecute.

c. Order the Clerk of Court to provide Plaintiff with Marshal Service Forms.

d. Order that, after the return of the completed Marshal Service Forms, the Clerk of Court seek waiver of service—consistent with Rule 4(d) of the Federal Rules of Civil Procedure—from Defendants "Chaplain Scott," "Chaplain Paul," "Hennen," Marisa Williams, Victor Wancheca, "Reid," "CPD Moe," Corey Anderson-Moe, "Lt. Spets," "T. Harrington," "AWO Stenseth," Nikki Vee, "Kruschke," and "Captain Darling."

e. Order that if a Defendant fails without good cause to sign and return a waiver within 30 days of the date that the waiver is mailed, the Court will impose upon that Defendant the expenses later incurred in effecting service of process.

Dated: November 18, 2022

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).